[No. 1227-1.  Division One—Panel 2.  July 10, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH PEELER, *Appellant.*

*J. Hartley Newsum,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *James J. Lamont, Deputy,* for respondent.

SWANSON, J.—Kenneth Peeler appeals from a judgment and sentence entered July 21, 1971, after a conviction of grand larceny by possession.

Defendant Peeler first assigns error to the admission of certain testimony of a police officer after the defense had rested, for the ostensible purpose of impeaching his credibility. He bases this assignment of error on the contention that the officer's testimony was offered by the state to contradict his testimony and to show its inconsistency, without first confronting him with the claimed self-contradiction and affording him an opportunity to admit, deny, or explain the inconsistent statement.

A brief recital of the pertinent facts is necessary to an understanding of the question raised. On direct examination Officer Kollar testified that he obtained the allegedly stolen woman's diamond wedding ring from the little finger of defendant Peeler's left hand after taking the defendant to the police station. He also stated that the defendant was wearing another ring, gold and jade with a diamond in it. In one of two written statements given by defendant Peeler to Detective Martin on the day following his arrest, which

were both admitted into evidence, defendant Peeler made this explanation of his possession of a diamond ring:

He asked me where I got the diamond ring that I was wearing on my little finger when I was arrested. I told him that I got it from a Mrs. Henderson who lives around 32nd and Madison. She gave it to me for Christmas. I got the ring from her in the early part of last week.

After the state rested its case, defendant Peeler took the stand. When confronted on cross-examination with the written statement given to Detective Martin, he explained the comment about where he got the ring he was wearing by saying it did not relate to the woman's diamond wedding band but, rather, to the man's jade and diamond ring.

After the defense rested, the state was permitted to recall Officer Kollar to the witness stand, this time for the asserted purpose of impeaching defendant Peeler's testimony that he was referring to the jade and diamond ring received from Mrs. Henderson, rather than to the allegedly stolen woman's diamond wedding band, when he gave the written statement to Detective Martin. Officer Kollar gave this testimony:

Q What items did he take off? A I asked the defendant to remove his jewelry. He took off a woman's wedding ring with three rows of diamonds from the small finger of his left hand. At this time, to put it in the bag, I observed that it had no mars or scratches; it looked fairly new. I asked the defendant where he got the ring. He stated that he received them from a girl friend for Christmas. Q Do you recall if he stated her name or not? A I believe he did. But I don't recall the name. Q Did you take any other items of jewelry at that time? A I took a man's ring, gold, with jade and a diamond in it. And also a wristwatch with a green face.

This is the testimony about which defendant Peeler complains and to which he assigns error, on the basis that it was improperly admitted over his objection that a proper foundation was lacking. The state disputes this contention and argues that a proper foundation was laid during Peeler's cross-examination when he was asked these questions:

Q Handing you State's Exhibit No. 1, have you ever seen that before? A In court. Q Have you ever seen it before that? A No. Q Didn't, in fact, Officer Kollar take this off your little finger when you were being taken into the police station? A No, he did not.

The state argues that it was unnecessary to ask Peeler specifically whether he made a statement about exhibit 1, the woman's diamond wedding ring, to Officer Kollar at the police station, because he had just denied that exhibit 1, the wedding ring, was taken from him by Officer Kollar at the time of his arrest, or that he had ever seen it before.

█ The witness should have been asked whether or not he made this statement in the context described by Officer Kollar so that he could either deny the statement, or admit it and explain it, or reconcile it with his own testimony. This procedure, if followed, might have obviated the necessity of recalling Officer Kollar. Assuming arguendo that his testimony falls within the category of impeaching evidence so that the procedure followed was improper, is such error prejudicial? We think not. As stated in *State v. Fliehman*, 35 Wn.2d.243, 245, 212 P.2d 794 (1949):

It is error to admit the prior inconsistent uncross-examined written statements of a witness, unless, on cross-examination, the witness has been confronted with the self-contradiction and has been given the opportunity to explain it or to reconcile it with his testimony. [Citations omitted.]

Whether or not such error is prejudicial, depends upon the circumstances of each case. The magnitude of the error in this case was increased by the absence of limiting instructions on the functions of impeachment.

We note that the trial court offered defendant Peeler an instruction to the jury limiting the consideration of Officer Kollar's testimony to the question of credibility alone, but such proposed instruction was rejected by the defendant.

█ Moreover, Officer Kollar's testimony, though ostensibly offered for the purpose of impeachment, was primarily rebuttal testimony. It may have been objectionable as improper rebuttal because it was properly a part of the state's

case in chief. Whether or not evidence may be presented out of order rests within the sound discretion of the trial court. We cannot find an abuse of discretion. Further, the defendant could have cured any disadvantage created by the officer's rebuttal testimony by explaining the statement attributed to him during surrebuttal and reconciling it with his own prior testimony. Although we do not approve the procedure followed, no prejudicial error resulted.

■■ We now pass to defendant Peeler's second assignment of error which is directed to the separation of the jury without his written consent. He claims the procedure followed violated RCW 10.49.110 which states in part:

Juries in criminal cases shall not be allowed to separate, except by consent of the defendant and the prosecuting attorney, . . .

The record discloses that defendant Peeler's trial counsel signed a written statement consenting to the separation of the jury, but the defendant's signature is absent. We are then presented with this question: May the statutory prohibition against separation of the jury be waived by the agreement of defendant's counsel alone, or does RCW 10.49.110 limit permission to consent to separation of the jury to the defendant? There is no contention that defendant's counsel acted contrary to his client's direction, only that the right to a sequestered jury is so personal to a defendant he alone can waive it. It is axiomatic that trial counsel is clothed with authority to speak for and act in behalf of his client and control the incidents of a trial. *State v. Blanchey,* 75 Wn.2d 926, 454 P.2d 841 (1969). His procedural acts done in the regular and orderly conduct of a case are those of his client and are binding upon his client. *See* RCW 2.44.010; *Cook v. Vennigerholz,* 44 Wn.2d 612, 269 P.2d 824 (1954). A lawyer appears in a trial as the representative and alter ego of his client. The interest of orderly procedure requires that when defense counsel acts for his client it be presumed that he acts with authority. *State v. Elder,* 130 Wash. 612, 228 P. 1016 (1924). We are convinced that a lawyer's authority to speak and act for his

client includes the authority to consent to the jury's separation.

Judgment affirmed.

FARRIS, A.C.J., and PETRIE, J., concur.