## State of Vermont v. Edward Slocum

[321 A.2d 51]

No. 194-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 4, 1974

*Robert I. Tepper*, State's Attorney, and *Stephen L. Klein*, Assistant State's Attorney, for the State.

*John J. Welch, Jr., Esq.*, and *Barry E. Griffith, Esq.*, Rutland, for Defendant.

Barney, C.J. The defendant was found guilty by a jury in district court of lewd and lascivious conduct with children. The issues raised by the appeal relate to the receipt into evidence of certain statements of the defendant in claimed vio-

lation of his constitutional rights, and to certain arguments to the jury made by the prosecutor in closing that are alleged to be inflammatory and prejudicial. The defendant seeks a new trial based on his claims of error.

The statements asserted to have been erroneously allowed to go before the jury were made on the occasion of the defendant's arrest for the crime charged. According to the testimony, the evidence relating to the critical period began with the arrival of two police officers at the residence of the defendant just after midnight. They had with them an arrest warrant charging the defendant with lewd and lascivious conduct based on information from the mother of the three little girls, as well as interviews with the children. The officers knocked and when the defendant answered the door, one of the officers said they had a complaint against him and wanted to talk to him about it.

The defendant told the officers to come in and, as they entered, said, "I knew those three little bitches were going to cause trouble." The officers did not at that time advise the defendant that they were there to arrest him on the warrant.

One officer did immediately say to the defendant, by way of interrupting any further statement, "Before you say anything to me, Ed, I want to advise you of your rights." He replied that he knew his rights, but the officer persisted that he had to tell him his rights anyway, just as a matter of procedure and law. The officer then read the standard *Miranda* warnings from a card. No question is raised but what the content of the warnings fulfilled the constitutional requirement.

After reading the warnings, the defendant was asked if he understood them. He repeated that he knew his rights. He was then asked if he was willing to talk with the officers at that time, and he said he was. He was told he was entitled to an attorney, and he replied that he knew his rights and had his own attorney but did not need an attorney.

Just at that point, a young girl about eight years of age, appeared at the bedroom door, and the defendant yelled to her, saying, "See, I told you, Vicky, when those girls were not home, when you called them, they went to the police. You tell them, Vicky, you tell them I didn't touch those ———— girls."

The officer then advised the defendant that the department had had a complaint that he had improperly touched the persons of three small girls that afternoon. He then denied touching the girls and said he had not been near them. He said the three little girls had come over to play with Vicky and asked to be sprayed under a hose. They changed into bathing suits and went out to be sprayed, and he said he had not been with them when they changed their clothes.

At this point the officers produced the warrant, gave the defendant a copy, read it to him, and placed him under arrest. He was then taken to the correctional center.

At the trial, the testimony of the three little girls involved was materially different from what the defendant had stated to the officers. They testified to his touching and handling the most intimate parts of their bodies, and to his frequent visits to the room while they were changing into bathing suits. The defendant did not take the stand. The discrepancies between the defendant's statements to the police and the testimony of the little girls was alluded to by the prosecutor on argument.

The defendant claims that the fact that the police did not immediately reveal to the defendant that they were there with a warrant for his arrest nullifies their right to interrogate even after giving the *Miranda* warnings. The State argues that since the interrogation took place in the home prior to arrest, without notice to the defendant that he might be taken into custody, the interrogation was not custodial within the doctrine of *Miranda* v. *Arizona,* 354 U.S. 449 (1966).

■ Assuming, for the sake of testing the issues raised, that this case is distinguishable from *State* v. *Meunier,* 126 Vt. 176, 224 A.2d 922 (1966), and that the interrogation here, although in the defendant's home, had custodial overtones to it, we still do not find any constitutional infirmities in their reception at trial. The first statement, made as the officers entered, and the comments to Vicky after the warnings were given, were not the product of custodial interrogation, but were admissible as volunteered statements. *State* v. *Oakes,* 129 Vt. 241, 254–55, 276 A.2d 18 (1971). The balance of the statements, all denials, came after the defendant had re-

ceived full *Miranda* warnings. Although he was not told at the next succeeding moment that the officers were in possession of a formal warrant for his arrest, he was told of the nature of the complaint against him before matters went any further. He was particularly told that a complaint had been made by three young girls that he had touched their persons that afternoon. It was obvious from his answers and reactions that he fully understood the nature of the accusation since he responded with a denial. Nothing to vitiate the validity of his voluntary statements after thus being warned has been made to appear, and the statements were properly received in evidence.

The defendant also complains of some statements made by the prosecutor in closing argument that are claimed to be improper as inflammatory and appeal to the passions and prejudices of the jury. He refers to an argument by the prosecutor referring to the necessity for these three little girls to come forward and testify about their "degrading" experience as being an ordeal. The prosecutor also remarked that the prosecuting witness would never forget what she had been through, no matter what the jury did. The defendant moved for a mistrial on the basis of these arguments, which motion was denied. The trial judge said the arguments might be borderline, but that he felt his instructions to the jury would sufficiently correct them. In his charge, the judge did in fact caution the jury against being influenced by any feelings of outrage based on the crime charged and directed them to decide the case on the evidence and the instructions on the law given by the court. He strongly reminded the jury of the presumption of innocence running in favor of the accused.

As stated in *State* v. *Audette,* 128 Vt. 374, 375, 264 A.2d 786 (1970), the danger of prejudice to the party charged from the very nature of the crime and evidence involved is very great. Nevertheless, no prejudice sufficient to overturn the verdict in this case has been demonstrated here. The burden of such demonstration is on the respondent, and, as in *State* v. *Jackson,* 127 Vt. 237, 238, 246 A.2d 829 (1968), and *State* v. *Bishop,* 128 Vt. 221, 230, 260 A.2d 393 (1968), although we are at pains to disapprove of such argumentative tactics,

we find no justification for finding reversible error. The experienced trial judge on the scene put the matter soundly to the jury, and in view of the evidence in the case and his handling of the matter, we concur in his judgment that the argument made did not mislead the jury to the prejudice of the defendant.

*Judgment affirmed.*