STATE OF NEBRASKA, APPELLEE, V.
STEVEN SAYERS, APPELLANT.

319 N.W.2d 438

Filed May 14, 1982. No. 44212.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired, and RONIN, D.J., Retired.

HASTINGS, J.

The defendant, Steven Sayers, was charged by information with theft by unlawful taking of a microwave oven, valued over $300 but less than $1,000, from a Montgomery Ward store. Following a trial by jury, the defendant was found guilty on February 13, 1981, by the District Court for Douglas County, and was sentenced to a term of 359 days in the Douglas County Correctional Complex. He has appealed from that conviction and sentence, contending that the evidence presented was insufficient as a matter of law to support his conviction; that certain exhibits were improperly admitted by the trial court; and that the trial court improperly instructed the jury with regard to the defendant's absence from the trial. We affirm.

As noted above, this case involves the alleged theft of a microwave oven from the Montgomery Ward store located at the Westroads Shopping Center in Omaha, Nebraska. At some point during November 1980, the retail store sales manager in charge of major appliances at that store noted an unaccounted-for decrease in the inventory of model 8201 microwave ovens. The manager reported this situation to the store's security manager, Valerie Moen, in the latter part of November 1980. After investigating the matter, Moen and another security officer, Douglas Jasa, began surveillance of the store's shipping, receiving, and customer pickup entrance during the afternoon of December 18, 1980. At approximately 8:15 p.m. on that date, they observed the defendant, who worked in the receiving department of the Ward store, approach the receiving area and enter the store through the customer entrance. About an hour later, at 9:15 p.m., defendant was seen by the security personnel walking on the dock and getting into a Pinto automobile parked in the parking lot near the docks. With the aid of binoculars, the security personnel were able to observe defendant sitting in the parked Pinto for about 5 minutes, after which he got out of the car and once again approached the dock area. Upon reaching the docks, the defendant was observed crouching behind some truck trailers, apparently observing some activity on the dock for several minutes. Defendant then approached one of the overhead doors located on the dock; raised it a few inches and then lowered it; looked under the truck trailers a second time; and then raised the same door, pulled a microwave oven box out from behind the door, and then lowered the door. Defendant then carried the box to his car, placed it in the car, and drove away. Both security personnel stated that the particular box was a sealed carton in which a model 8201 microwave oven was shipped.

An attempt to stop the defendant before he got out of the parking lot was unsuccessful, although Jasa was able to approach the defendant on foot and identify himself as a member of Ward's security force before the defendant drove away. At this point Jasa and Moen returned to Ward's to obtain defendant's address and call the police. Having done so, the two proceeded to defendant's home, where they established surveillance for the rest of the night. They observed defendant arrive home at about 4:25 a.m., leave about 4:30 a.m., and return home for the rest of the night at about 4:45 a.m. Jasa and Moen waited until 6:30 a.m., at which time they drove by the Pinto and were able to see that there was no microwave oven box in the car. Upon making this observation they went to the police station to report the matter to the police. A subsequent search of defendant's home by the police on December 19, 1980, failed to produce any property belonging to Montgomery Ward. The defendant was convicted on the basis of the testimony of Jasa and Moen regarding the observations they had made on December 18 and 19, 1980.

The nature of the assignments of error makes it necessary to address the matter of the admissibility of certain evidence prior to discussing the sufficiency of the evidence to support the conviction. Defendant contests the admission of exhibits 7, 8, and 9. Exhibit 7 was a "package pickup log" which was allegedly signed by all the customers who carried merchandise out of the dock area which was the target of the surveillance on December 18, 1980. Exhibit 8 was a "home demonstration log" which was allegedly signed by all Montgomery Ward employees who take merchandise home. Exhibit 9 was a log of all "no sales" deliveries, which were deliveries made to a customer's home without an actual purchase being made of the item delivered.

These three exhibits were offered following the

testimony of Valerie Moen. Moen testified to the contents of the exhibits, to the purpose served by each record, and to the fact that there were no other records that would relate to merchandise removed from the store through the area observed during the surveillance. Furthermore, Moen stated that the records were all stored in the "customer accommodation center" of the store under the supervision of a separate manager, but that she, Moen, had the authority to take whatever records she needed in connection with her duties as security manager. However, during cross-examination, Moen admitted that she had nothing to do with the creation or keeping of these records, and, most importantly, had nothing to do with the verification of the accuracy of the various records.

On the basis of this information, the court originally sustained an objection to the foundation laid for the admission of exhibits 7, 8, and 9. However, for reasons discussed hereafter, the court reversed itself and admitted the exhibits, none of which contain the defendant's signature and circumstantially show that the defendant did not have the authority or permission to remove a microwave oven from the Montgomery Ward store on December 18, 1980.

The circumstances surrounding the court's reversal of its decision revolve around the defendant's absence from his trial. While the defendant was present at the commencement of the trial and did appear briefly on the second day, he was not present for most of the second day of testimony for some unexplained reason. The proceedings on this second day included the testimony of Valerie Moen and the offering of the exhibits in dispute. At some time prior to the defendant's disappearance, and before the court had originally sustained the objections to exhibits 7, 8, and 9, his counsel had discussed these exhibits again with the prosecution and had agreed to waive any foundational objections he might have

had concerning these three exhibits. However, following his client's disappearance, counsel was ordered by the court to continue to represent the defendant with "vigor, including cross-examination and making final argument." Pursuant to this order, defense counsel felt obligated to object to the offer of the exhibits in his client's absence.

After being presented with this explanation of the situation, the court noted that it would "reconsider its previous rulings on Exhibits 7, 8 and 9 and when we reconvene, the Court will receive Exhibits 7, 8 and 9 into evidence without further foundation."

The defendant now assigns such action by the trial court as error, contending that insufficient foundation was established to meet the business records exception to the hearsay rule found in Neb. Rev. Stat. § 27-803 (Reissue 1979). The State counters this argument by contending that sufficient foundation was presented in the testimony of Valerie Moen, who, in the State's opinion, meets the requirements of a "qualified witness" within the provisions of the aforementioned statute.

A preliminary matter requiring our attention is whether the waiver of foundation for the exhibits in question by the defendant's counsel was binding upon the defendant. Neb. Rev. Stat. § 7-107 (Reissue 1977) provides in part: "An attorney or counselor has power: . . . (2) to bind his client by his agreement in respect to any proceeding *within the scope of his proper duties and powers;* but no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court . . . ." (Emphasis supplied.)

While this statute has yet to be applied in a criminal action, we have noted in the past that "[t]he language of this section is unambiguous, and its meaning is too plain to admit of more than one construc-

tion. A client is only bound by the oral stipulations of his attorney made out of court, when the same are established by the testimony of the attorney making the same. The purpose and object of the legislature in adopting the above section was to relieve the courts from enforcing oral agreements of attorneys entered into out of court, in regard to a matter pending in court, in all cases *except* where the contract is established by the evidence of the attorney of the client against whom it is sought to be enforced." (Emphasis supplied.) *German-American Ins. Co. v. Buckstaff,* 38 Neb. 135, 140-41, 56 N.W. 692, 694 (1893).

In the present action the record makes it quite clear that the agreement to waive foundation for the exhibits in question was established by the statement of the defense attorney. Following the court's refusal to admit the exhibits, the defendant's counsel made the following remarks to the judge in chambers: "Now, I talked with them [the State] and I said that I would not object on foundational grounds to the fact that she [Moen] wasn't the keeper of the records, et cetera, and that that wouldn't be any grounds for my objecting to those exhibits if they were available and if they were brought in. That occurred last night. . . . I felt that if the evidence was there and the State had it, I wasn't going to object on those foundational grounds." Counsel later admitted that the only reason he had objected to the exhibits was due to the defendant's absence. Therefore, under *Buckstaff,* defendant is bound by his counsel's waiver of foundation on these exhibits if the ability to make that waiver was "within the scope of his [counsel's] proper duties and powers." § 7-107.

While there are numerous cases on the matter, it is difficult to formulate a general rule concerning the powers and duties of defense counsel in a criminal action. However, a general consensus of some

of those courts that have dealt with this issue is that, except for such basic decisions as to whether to plead guilty, waive a jury trial, or testify in his or her own behalf, a defendant is bound by the tactical or strategic decisions made by his or her counsel. *Sims v. State,* 295 N.W.2d 420 (Iowa 1980); *Townsend v. Superior Court of Los Angeles County,* 15 Cal. 3d 774, 543 P.2d 619, 126 Cal. Rptr. 251 (1975); *Gallup v. State,* 559 P.2d 1024 (Wyo. 1977); *The People v. Williams,* 36 Ill. 2d 194, 222 N.E.2d 321 (1966); *State v. Mihill,* 394 A.2d 1179 (Me. 1978); *State v. Ames,* 222 Kan. 88, 563 P.2d 1034 (1977); *State v. Graham,* 19 N.J. Super. 70, 88 A.2d 5 (1952). See, also, *Wainwright v. Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice, *The Defense Function,* Stand. 4-5.2 (2d ed. 1980).

The rationale behind such a rule has been noted to be that " 'only counsel is competent to make such a decision, that counsel must be the manager of the law-suit, that if such decisions [strategic and tactical decisions] are to be made by the defendant, he is likely to do himself more harm than good, and that a contrary rule would seriously impair the constitutional guaranty of the right to counsel.' " *The People v. Williams, supra* at 204, 222 N.E.2d at 326.

It should be noted that in many of these cases the waiver of the defendant's rights was made in the presence of the defendant, allowing the courts to find an implied acquiescence to the waiver by the defendant's silence. Indeed, those general propositions of law that exist in this area assert that a waiver is only good if made in the presence of the defendant. 7A C.J.S. *Attorney & Client* § 208 c. (1980), or if the waiver is made after consultation with the defendant. ABA Standards for Criminal Justice, *supra.* However, such consultation with the defendant was made impossible in this instance by the defendant's voluntary absence from the trial.

In light of such a voluntary absence from the trial, we are persuaded by the rationale in *State v. Mihill, supra,* that the defendant remains bound by a waiver of the foundational requirement made outside his presence and without consultation with him. "If, once a defendant has voluntarily absented himself, the trial court is to be able to move forward, certain stipulations by the attorneys short of an admission of guilt, must be recognized as binding the respective parties. Otherwise, the progress of the trial would be needlessly impeded. These stipulations should be distinctly made and not left to inference." *Id.* at 1180. Therefore, in situations where a defendant has voluntarily absented himself from trial, we conclude that a tactical or strategical decision by that defendant's counsel will be binding upon that defendant in spite of his or her voluntary absence.

It has clearly been established by this court in cases dealing with ineffective assistance of counsel that "[t]he decision to object or not to object is *part of trial strategy* . . . ." (Emphasis supplied.) *State v. Bartlett,* 199 Neb. 471, 476, 259 N.W.2d 917, 921 (1977). See, *State v. Fowler,* 201 Neb. 647, 271 N.W.2d 341 (1978); *State v. Auger,* 206 Neb. 666, 294 N.W.2d 379 (1980). Similarly, we must conclude that in this instance the decision on the part of the defendant's counsel to waive the foundational requirement for the exhibits in question was a tactical decision on his part and as such bound the defendant. We conclude that defendant's second assignment of error is without merit.

We must now consider the defendant's first assignment of error, challenging the sufficiency of the evidence to support his conviction. We do this in light of our conclusion that the exhibits showing a lack of consent by the owner of the merchandise to the defendant's possession of that merchandise were properly received in evidence. It is well settled that this

court " ' "will not interfere on appeal with a conviction based upon evidence unless it is so lacking in probative force that the court can say as a matter of law that it is insufficient to support a verdict of guilt beyond a reasonable doubt." ' [Citations omitted.]

"Moreover, we have repeatedly said: 'In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.' [Citations omitted.]" *State v. Rolling,* 209 Neb. 243, 248, 307 N.W.2d 123, 126 (1981).

Having reviewed the record in this case, we cannot conclude that the evidence is so lacking in probative force that it is insufficient to support the verdict of guilt. The circumstances surrounding defendant's activities on the day in question were entirely consistent with the establishment of his guilt. The defendant's first assignment of error is also without merit.

This brings us to the third and final assignment of error, which challenges the propriety of the instruction given to the jury regarding the defendant's absence from the concluding phase of his trial. This instruction reads as follows: "You are to draw no conclusions or inferences from the fact that the defendant is not present in Court. The defendant's absence is not in any way due to any actions or conduct of the State of Nebraska, of Mr. Sigler, or of Mr. Riley." Mr. Sigler was the prosecutor in the action and Mr. Riley was the defense counsel.

On two occasions in the past we have approved of a "flight" instruction being given to the jury in situations involving flight from the scene of the crime, not the defendant's absence from trial, as is in-

volved herein. *Davis v. State,* 171 Neb. 333, 106 N.W.2d 490 (1960); *State v. Lincoln,* 183 Neb. 770, 164 N.W.2d 470 (1969). In these instances the jury was allowed to consider the evidence of flight from the scene of a crime in connection with all the other evidence in the case in order to determine the defendant's guilt or innocence. By contrast, the court in the present action explicitly informed the jury that they were to draw no conclusion or inferences from the defendant's absence from trial.

Various other jurisdictions have adopted assorted methods for dealing with the situation arising from the defendant's failure to appear on an appointed date or absenting himself during the course of a trial. New Jersey allows the court to instruct the jury that failure to appear may be indicative of guilt in instances where it is clearly shown that the defendant's motive for fleeing was to evade the criminal process. *State v. Andrial,* 150 N.J. Super. 198, 375 A.2d 292 (1977). On the other hand, California permits its courts to instruct the jury to consider the defendant's absence as a relevant fact even in the absence of proof of a motive for flight. *People v. Snyder,* 56 Cal. App. 3d 195, 128 Cal. Rptr. 297 (1976). Massachusetts' juries can only draw an inference of guilt from the defendant's failure to appear if they find beyond a reasonable doubt that the defendant's departure indicated a consciousness of guilt. The instruction cannot demand that such an inference be drawn. *Com. v. Patch,* 418 N.E.2d 344 (Mass. App. Ct. 1981). An instruction allowing the jury to consider the defendant's disappearance during trial as another relevant fact in determining guilt or innocence was given in *Skinner v. State,* 270 Ind. 52, 383 N.E.2d 307 (1978), and such an instruction was found to be appropriate on appeal. Finally, the Supreme Court of Georgia has approved the giving of a flight instruction to the jury in an action where the defendant failed to appear for his trial, having been

released on bond. *Bradberry v. The State,* 238 Ga. 83, 230 S.E.2d 885 (1976).

Of special note is the approach taken by an appellate court in Maryland. In *Pearson v. State,* 28 Md. App. 464, 347 A.2d 239 (1975), the jury was informed that the defendant's disappearance following the lunch break was entirely voluntary but that they should not hold it against him and were to evaluate the evidence just as if the defendant had been present throughout the trial. While the issue was not properly before the appellate court, the court did note that the jury was entitled to know what had happened to the defendant, and that in informing the jury of the defendant's absence the court was careful to caution it that it was not to affect the outcome of the trial.

*State v. Jefferson,* 11 Wash. App. 566, 524 P.2d 248 (1974), involved the giving of an instruction to the effect that the jury was to consider the fact that the defendant had failed to appear at the start of his trial was a relevant circumstance to consider in determining the defendant's guilt or innocence. On appeal, the court noted that "evidence of 'flight' should not be the subject of an instruction," in that such evidence is " 'only marginally probative as to the ultimate issue of guilt or innocence. The interest of justice is perhaps best served if this matter is reserved for counsel's argument, with little if any comment by the bench.' " *Id.* at 571, 524 P.2d at 251. However, no error was found on appeal.

Finally, defendant points to *State v. Staples,* 354 A.2d 771 (Me. 1976), in support of his contention that the court erred in giving the particular instruction in question. In *Staples* the defendant fled from trial after a coconspirator implicated him on the stand. In noting the defendant's absence, the trial judge told the jury: " '. . . I assume it to be a voluntary act on the part of Mr. Staples and, if anything is prejudicial, he has brought the prejudice upon him-

self.' " *Id.* at 778. However, on three other occasions the judge informed the jury that the defendant's actions were not to have a bearing on the question of his guilt or innocence. In finding no prejudicial error in the trial court's action, the appellate court noted: "The State is entitled to have the jury know that no unjust governmental action has prevented the defendant from being present at his trial. Therefore, when it is feasible, the jury should be informed only that the defendant has made *a choice not to be present* at the trial." (Emphasis in original.) *Id.* at 779.

From the presentation of cases above, it is obvious that no clear rule exists in this area. However, we must agree with *Pearson* in concluding that the jury was entitled to know what happened to the defendant, and we must also agree with *Staples'* conclusion that the State was entitled to have the jury know that no unjust governmental action was preventing the defendant from being present at his trial. While this information may not be considered as relevant in determining the defendant's guilt or innocence in this particular circumstance, we note that the explicit wording of the instruction is that "no conclusions or inferences" were to be drawn from the defendant's absence.

The rule in Nebraska is: " 'It is presumed a jury followed the instructions given in arriving at its verdict and, unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.' " *Schluter v. State,* 151 Neb. 284, 295, 37 N.W.2d 396, 402 (1949). In this instance, presuming that the jury followed the explicit instructions of the court, one cannot conclude that the defendant was prejudiced by the instruction. The defendant's third assignment of error is without merit, and we affirm his conviction.

AFFIRMED.