# State of Vermont v. William Lewis

[556 A.2d 59]

No. 85-555

Present: **Allen, C.J., Peck and Dooley, JJ., and Keyser, J. (Ret.),**
**Specially Assigned**

Opinion Filed October 7, 1988

Motions for Reargument Denied January 24, 1989

*Robert M. Butterfield, Caledonia County Deputy State's Attorney,* St. Johnsbury, for Plaintiff-Appellant.

*Walter M. Morris, Jr., Defender General,* and *William A. Nelson, Appellate Defender,* Montpelier, for Defendant-Appellee.

**Dooley, J.** The State appeals, pursuant to V.R.A.P. 5(b)(1)(C), from an order granting defendant's motion to suppress the testimony of the investigating officer. The motion alleged the negligent loss of evidence. We vacate the order and remand for a further hearing on the motion to suppress.

Defendant is charged with hindering Deputy Sheriff Wayne Boyce in the execution of his duties. Defendant claims that he was in fact trying to help the officer. In the course of Deputy Boyce's investigation and preparation of this case, he prepared an initial handwritten draft report, a second handwritten draft report, and a typed final draft report. The unavailability of the initial handwritten draft is at issue in this appeal.

The trial court found, from evidence presented at the suppression hearing, that Deputy Boyce's initial draft report was prepared about two or three weeks after the incident, in handwritten form. Pursuant to standard operating procedure the report was reviewed by Boyce's supervising officer, Deputy Sheriff Phillip

Shumway, who informed Boyce that the report was unsatisfactory because it was not sufficiently complete or clear. He returned the report to Boyce with instructions to rewrite it in a manner that more closely tracked the statutory elements of the offense. Boyce then prepared second handwritten draft, which was typed verbatim.

The first handwritten draft was destroyed after the second handwritten report was prepared. The second handwritten report was destroyed after the typewritten report was prepared. At the suppression hearing, Deputy Shumway testified as to his review of the initial draft report, but did not specify how the draft report differed, if at all, from the final report.

Following a suppression hearing, the trial court suppressed the testimony to be presented by Deputy Boyce because of the destruction of the initial draft. The suppression order was entered on November 6, 1985. The State moved for permission to appeal from the suppression order on November 12 pursuant to V.R.A.P. 5(b)(1)(C). That rule implements 13 V.S.A. § 7403(c) in allowing the State to bring an interlocutory appeal from a suppression order in a felony case and requires that the prosecuting attorney file a certification that, among other things, the "appeal is necessary to avoid seriously impeding" the proceeding. The State filed the certification with its motion for permission to appeal but omitted the word "seriously" from the certification. Because of the omission, the trial court denied the motion on December 4, but advised that the court would reconsider its decision if the State amended the certification to conform to the rule. On December 10, the State filed a new version of the motion to appeal, including the word "seriously" in the certification, and the court then granted the motion.

Appellee argues that the December 10 motion was not timely filed, and that this appeal should therefore be dismissed. V.R.A.P. 5(b)(1) requires that the State's motion for an interlocutory appeal in circumstances such as this be made within 7 days after the entry of the order appealed from. See also 13 V.S.A. § 7403(e). Appellee argues that the proper motion was not filed within 7 days of the suppression order and, even if the period was tolled during the time the court considered the original motion to appeal, that the time limit was exceeded.

We have had occasion in the past to consider the timeliness of an interlocutory appeal motion by the State in a felony case. See

*State* v. *Mason,* 147 Vt. 647, 518 A.2d 366 (1986) (mem.) (citing *State* v. *Corliss,* 145 Vt. 169, 484 A.2d 924 (1984)). Unlike those cases, the motion to appeal in this case was filed in a timely fashion. The later December 10 "motion to appeal" merely conformed the timely-filed motion to the requirements of V.R.A.P. 5, so that the court could address the motion. Moreover, the timeliness of the motion was not raised below, nor was it raised by a motion to dismiss this appeal. Rather, it is brought to the attention of the Court and the parties for the first time in appellee's brief. As it is not jurisdictional, it will not be considered at this late stage in these proceedings

On the merits, the State argues that neither the constitutional standards for disclosure of evidence to the defense nor the applicable discovery rule, V.R.Cr.P. 16, requires suppression of Deputy Boyce's testimony because of the destruction of the first draft report. Actually, the constitutional obligation to disclose and the obligation under the criminal rule are identical. Both are based on the rule announced in *Brady* v. *Maryland,* 373 U.S. 83, 87 (1963). The rule, as stated in V.R.Cr.P. 16(b)(2), imposes an obligation on the prosecution to disclose "any material or information within [its] possession or control which tends to negate the guilt of the defendant as to the offense charged . . . ." Reduced to its essentials, the State's argument is that defendant has failed to show that the draft report would tend "to negate the guilt of the defendant."

In addressing the question, the trial court applied our two leading "lost evidence" decisions, *State* v. *Bailey,* 144 Vt. 86, 475 A.2d 1045 (1984), and *State* v. *Smith,* 145 Vt. 121, 485 A.2d 124 (1984). In these cases, we established a three-part "pragmatic balancing" test, examining the degree of the government's negligence or bad faith, the importance of the lost evidence, and the other evidence of guilt adduced at trial. In reaching its decision, the court viewed the lost first draft as crucial to a determination of the credibility of Deputy Boyce, although it found no evidence that Boyce acted in bad faith in destroying it.

The court did not, however, go on to examine the prejudice to the defendant which, we have recently held, is also an element of any *Brady* v. *Maryland* and V.R.Cr.P. 16(b)(2) analysis to determine whether an error is harmless. See *State* v. *Lombard,* 146 Vt. 411, 416, 505 A.2d 1182, 1185 (1985). In order to determine whether destruction of the first draft in the situation at bar is

prejudicial to defendant it is crucial to determine whether the contents of this draft may be established through the testimony of the supervisor who reviewed it. The destruction of a draft that has been reviewed by a supervisor presents a different case from that of an unreviewed draft, from the point of view of prejudice to the defendant:

> This difference in paper flow later becomes crucial in making the harmless error determination, for in *United States* v. *Walden* [578 F.2d 966 (3d Cir. 1978)] the interposition of a supervisor between the rough draft and final report made possible credible, independent corroboration of the rough draft's contents.

*United States* v. *Butts,* 535 F. Supp. 608, 613 n.4 (E.D. Pa. 1982). This ability to question other witnesses about whether material was omitted may cure the possible prejudice to the defendant from the destruction of a first report from which a second draft has been prepared. See *State* v. *Kaiu,* 692 P.2d 1166, 1170 (Haw. Ct. App. 1984).

In the case at bar we do not reach the issue of whether the defendant was prejudiced by the destruction of the initial draft, because we cannot tell how the initial draft differed, if at all, from the second draft or the typed report. The trial court made no finding as to the supervisor's recollection of the draft report, and its Finding No, 16, regarding Deputy Boyce's recollection of the various draft reports, is an inadequate recitation of the witness's testimony. *Krupp* v. *Krupp,* 126 Vt. 511, 515, 236 A.2d 653, 656 (1967).

Accordingly, we vacate the suppression order and remand for a new hearing on the motion to suppress, consistent with this opinion.

*Vacated and remanded.*

## ON MOTIONS TO REARGUE

Defendant seeks reargument on the ground that the Court has misapprehended points of law and fact presented in the briefs of the parties. Following the filing of the motion, the Court sought additional briefing on the impact of *Arizona* v. *Youngblood,* ___ U.S. ___, 109 S. Ct. 333 (1988), on this case. Relying on *Arizona* v.

*Youngblood* and other cases, the State also seeks reargument, urging outright reversal of the trial court order.

The heart of the original decision was that it was impossible on the record before us to determine the significance of the initial draft of the officer's report and that the critical trial court finding (Finding No. 16) was a mere recitation of evidence. Whether the issue is prejudice to the defendant, or a "reasonable possibility" that the evidence is favorable, or the "importance of the evidence," see *State* v. *Bailey,* 144 Vt. at 94-95, 475 A.2d at 1050-51, it is not possible to gauge the nature and significance of the lost evidence without the proper finding. This deficiency remains whether we view the case as involving disclosure of exculpatory material under *Brady* v. *Maryland,* 373 U.S. 83, or involving discovery sanctions under V.R.Cr.P. 16.2(g).

Similarly we are unwilling to analyze the effect of *Arizona* v. *Youngblood* on this record.

*Motions for reargument denied.*