2013 VT 14

**STATE of Vermont v. Jeffrey GENTES**

[70 A.3d 967]

No. 12-133

¶ 1. February 21, 2013. Defendant, who entered a conditional guilty plea to the charge of driving while intoxicated (DWI), argues on appeal that the superior court's criminal division erred by denying his motion to dismiss both the criminal charge and the civil suspension of his license. Defendant argued for dismissal based on his claim that the Vermont Department of Health's negligence deprived him of his statutory right to obtain an independent blood test result. We affirm.

¶ 2. Defendant was stopped for speeding at around 1:00 a.m. on October 13, 2011. When the state trooper approached and began speaking to defendant, he detected a moderate odor of alcohol emanating from the vehicle. Defendant acknowledged that he had consumed alcohol. When defendant failed to satisfactorily perform field sobriety exercises and refused to provide a preliminary breath sample, the trooper arrested him and transported him to a local police department, where he provided an evidentiary breath sample that registered a blood-alcohol content (BAC) of .140 on the DataMaster machine. That result was confirmed by a second DataMaster sample.

¶ 3. After defendant was issued a citation, he had a blood sample drawn at a local hospital for independent analysis. The hospital forwarded the sample, along with a form, to the Vermont Department of Health for testing, which received it later that same day. Upon reviewing the form, a department employee misread defendant's last name and filed the sample under "Centes" rather than "Gentes."

¶ 4. On October 14, 2011, defense counsel wrote to the department and requested that defendant's blood sample be sent to a laboratory in New Hampshire for testing. On November 16, 2011, a department employee advised defense counsel in writing that the department had not received defendant's sample. This representation was based on the fact that the sample had been filed under the wrong name. The department later destroyed the sample after holding it for forty-five days. See 23 V.S.A. § 1203a(d) (requiring department to retain independent blood sample "for a period of at least 45 days from the date the sample was taken").

¶ 5. Defendant moved to dismiss the DWI charge, arguing that the department's failure to preserve his blood sample violated his statutory right to an independent test. See *id.* § 1202(d)(4) ("The person . . . has the right to have additional tests made by someone of the person's own choosing at the person's own expense."); *id.* § 1203a(a) ("A person tested has the right at the person's own expense to have someone of the person's own choosing administer a chemical test or tests in addition to any administered at the direction of the law enforcement officer under section 1203 of this title."); see also *State v. Hoffman*, 148 Vt. 320, 322, 532 A.2d 577, 578 (1987) ("[T]he right to an independent blood test is an integral component of the implied consent law in that it performs the important function, when invoked, of corroborating or challenging the accuracy of the breath test results that are used by the State as evidence of guilt." (citation omitted)). Applying the lost-or-destroyed-evidence framework set forth in *State v. Bailey*, 144 Vt. 86, 95, 475 A.2d 1045, 1050 (1984), which in turn was based on the analysis set forth in the leading federal case, *United States v. Bryant*, 439 F.2d 642, 653

(D.C. Cir. 1971), the trial court denied the motion to dismiss. Defendant's conditional plea and this appeal followed.

¶ 6. On appeal, defendant reiterates that dismissal is the appropriate remedy to vindicate his right to an independent test — a critical right denied him by virtue of the State's carelessness. We find this argument unavailing. Despite the significance once attached to the independent test in *Hoffman*, its import has since been diminished by legislative amendment. The statutory due process implication arising from the right to an independent test under §§ 1202(d)(4) and 1203a(a) is now limited in effect by the second sentence in § 1203a(a): "The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of an enforcement officer unless the additional test was prevented or denied by the enforcement officer."

¶ 7. In this case, there is no evidence that the state trooper acted in bad faith or did anything to prevent defendant from obtaining an independent blood sample. To the contrary, the trooper made sure that defendant was aware of his right to obtain an independent sample. Indeed, the police were not involved at all in defendant's arrangement to have a blood sample taken at the hospital or the subsequent handling of the sample. It was the department that failed to correctly label the sample, resulting in it being misfiled and eventually destroyed. There is no statutory violation under these circumstances. Cf. *State v. Massey*, 169 Vt. 180, 187-88, 730 A.2d 623, 628-29 (1999) (finding that trial court did not abuse its discretion by admitting DataMaster test result and instructing jury that defendant's failure to obtain independent blood sample was not due to actions of enforcement officer); *State v. Guidera*, 167 Vt. 598, 600, 707 A.2d 704, 705 (1998) (mem.) (concluding that admission of one valid

infrared result is fully consistent with statute allowing suspects to have second breath sample taken, even if second result is invalid, as long as invalid result is not due to performance of instrument). Because defendant's inability to obtain an independent test was not "prevented or denied by the enforcement officer," there is no basis in the statute for suppression of the remaining evidence, and no call in the statute for dismissal. 23 V.S.A. § 1203a(a).

¶ 8. Defendant also asserts a constitutional claim to dismissal on account of the State's loss of his evidence. Relying on *State v. Delisle*, 162 Vt. 293, 310, 648 A.2d 632, 642-43 (1994), in which this Court adopted as the state constitutional standard the lost-or-destroyed-evidence test set forth in *Bailey*, defendant maintains that the department's negligent handling of his blood sample deprived him of his constitutional right to "call for evidence in his favor" as set forth in Chapter I, Article 10 of the Vermont Constitution. Under that test, "if a defendant shows a reasonable possibility that the lost evidence would be exculpatory," then the proper sanction for its absence depends upon a pragmatic balancing of the following three factors: "(1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial." *Id.* (quotation omitted). Essentially, defendant argues that the trial court erred in failing to dismiss the charge against him based on an application of the *Bailey* test.

¶ 9. Here, with respect to the second *Bailey* factor, the physical indicia of intoxication observed by the state trooper and the DataMaster breath test results demonstrating that defendant was well over the "legal limit" of .08 do not suggest a "reasonable possibility" that defendant's independent blood sample would have produced exculpatory evidence. See, e.g., *Commonwealth v. Olszewski*, 625

N.E.2d 529, 535 (Mass. 1993) (stating "reasonable possibility" must be "based on concrete evidence and not on mere speculation, that the [government's] actions deprived [the defendant] of evidence that would have been favorable to his case"); *State v. Mines*, 671 P.2d 273, 279 (Wash. Ct. App. 1983) ("Imaginative speculation may lead to a conclusion that destroyed evidence could be material and favorable, but such a possibility may not be *reasonable*." (quotation omitted)). Perhaps a reasonable possibility of a contrary result could be supported under different circumstances, such as when the Data-Master results are more marginal or where the functioning of the machine is questionable. No evidence in this case, however, supports what appears to be only defendant's wishful thinking that an independent analysis might have been exculpatory.

¶ 10. As to the two other *Bailey* factors, there was but mere negligence behind the loss of the evidence, and significant evidence of impairment. There is no evidence of bad faith on the part of the department in its handling of the sample. There is no challenge to the trial court's finding that the loss occurred due to simple mislabeling and misfiling. Because there is only slight negligence on the part of the State, the culpability attributable to the State is only minimally weighted in favor of defendant.

¶ 11. Concerning the balance of evidence against defendant, the State's proof was substantial. Defendant was stopped for exceeding the speed limit by approximately thirty miles per hour. The investigating state trooper detected the smell of alcohol, and defendant admitted that he had been drinking. The trooper noted no fewer than nine clues of impairment when defendant attempted three field sobriety exercises. At the police station, defendant provided a breath sample that produced an evidentiary test result significantly above the legal limit. A sec-

ond sample was taken that produced a similar result. Such an aggregate of incriminating evidence weighs in favor of the State and against dismissal based on the mere possibility of a differing blood test.

¶ 12. On the whole, the trial court concluded that the circumstances did not warrant dismissal of the DWI charge. The only consequence of the mistakenly destroyed blood sample imposed by the court was that defendant would "be allowed to establish to the jury that he attempted to obtain an independent blood sample and the circumstances surrounding its destruction." Having similarly weighed the *Bailey* factors, we find no constitutional violation and agree with the trial court that dismissal of the charge against defendant was not an appropriate remedy for the mistakenly destroyed evidence in the context of this particular case.

*Affirmed.*