Dooley, J.,
¶ 19. concurring. I agree that this case should be affirmed on the ground that under State v. Dimick there is no obligation to tape major roadside stops; thus, I agree fully with *162 the majority decision. 173 Vt. 547, 550, 790 A.2d 435, 438 (2001) (mem.). I write separately to express my belief that the test introduced in State v. Bailey is generally inapplicable in cases where the lost, destroyed, or undisclosed evidence does not involve the ultimate question of guilt or innocence, but instead, bears on the constitutionality of how that evidence was acquired. 144 Vt. 86, 94-95, 475 A.2d 1045, 1050 (1984). This is an additional reason why we should affirm in this case.
¶ 20. There are three factors suggesting Bailey is limited in its application. First, the third element of the Bailey test is the weight of “other evidence of guilt adduced at trial,” id. at 95, 475 A.2d at 1050, and this element makes sense only if the unpreserved evidence relates only to guilt or innocence. See State v. Porter, 2014 VT 89, ¶ 30, 197 Vt. 330, 103 A.3d 916 (noting that “the Bailey test depends on the evidence of guilt produced at trial”). Second, in the federal case underlying Bailey, the Court of Appeals for the District of Columbia recognized that the Supreme Court of the United States “ha[d] not yet attempted to define” the standard of constitutional coverage of favorable evidence with precision, but nonetheless noted it was the law of the circuit that due process “applies to all evidence which might have led the jury to entertain a reasonable doubt about [the] defendants’ guilt,” and conducted its analysis accordingly. United States v. Bryant, 439 F.2d 642, 648 (D.C. Cir. 1971) (citation and alterations omitted); see also State v. Gentes, 2013 VT 14, ¶ 5, 193 Vt. 669, 70 A.3d 967 (mem.) (observing that lost-or-destroyed-evidence framework explicated in Bailey was “based on the analysis set forth in the leading federal case” of Bryant).
¶21. Third, a review of our case law reveals Bailey has exclusively been utilized in instances where undisclosed evidence directly bore on the ultimate question of guilt or innocence. See, e.g., Porter, 2014 VT 89, ¶¶ 27, 30 (concluding trial court “appropriately applied the Bailey test” in case where potentially exculpatory evidence was blood from victim’s face, victim’s fingernail clippings, clothes and scrapings, and hair found in her clothing, which went to identity of attacker); State v. Gibney, 2003 VT 26, ¶ 42, 175 Vt. 180, 825 A.2d 32 (affirming trial court’s “pragmatic balancing of the Bailey factors” finding there was no violation of Article 10 in police officers’ destruction of their investigatory notes); State v. Devine, 168 Vt. 566, 568, 719 A.2d 861, 864 (1998) (mem.) (finding State’s destruction of vehicle did not preclude *163 defendant charged with negligent operation of vehicle from contesting State’s estimate of his speed at impact); State v. Delisle, 162 Vt. 293, 311-12, 648 A.2d 632, 643-44 (1994) (concluding balancing test favored State in case involving loss of victim’s hyoid bone, which defendant wanted to use to show victim was not strangled as State claimed, and tarp on which body was found, which defendant wanted to use to show witness who testified defendant had similar tarp had incorrectly described it, as defendant had other means of making his defense).
¶ 22. In cases such as this, where the missing evidence bears on a collateral or pretrial issue, I would advocate for a return to the federal standard expressed in Arizona v. Youngblood, 488 U.S. 51 (1988). In Youngblood, the Supreme Court established two standards: one for a failure to preserve “material exculpatory evidence,” where, as per Brady v. Maryland, 373 U.S. 83 (1963), the good or bad faith of the State is irrelevant, and one for “potentially useful evidence,” wherein a denial of due process is only found if a criminal defendant can show “bad faith on the part of the police.” Youngblood, 488 U.S. at 57, 58. Bailey preceded Youngblood by four years; accordingly, we concluded it represented the controlling federal standard in State v. Seifert, 151 Vt. 66, 70, 557 A.2d 494, 497 (1989). However, in Delisle, we noted that:
We believe, however, that Youngblood is both too broad and too narrow. It is too broad because it would require the imposition of sanctions even though a defendant has demonstrated no prejudice from the lost evidence. It is too narrow because it limits due process violations to only those cases in which a defendant can demonstrate bad faith, even though the negligent loss of evidence may critically prejudice a defendant. Because the Bailey test balances the culpability of the government’s actions and the prejudice to a defendant, we adopt it as the state constitutional standard.
162 Vt. at 310, 648 A.2d at 643.
¶ 28. Although I remain in accord with the reasoning of Delisle, and believe Bailey is the preferable standard for state constitutional claims, I maintain the narrowness of its scope limits its application to those cases where the missing evidence pertains directly to a criminal defendant’s guilt or innocence, such that its *164 absence makes the presentation of a defense more difficult. To that end, I believe that in its extension beyond exculpatory evidence, to all “potentially useful evidence,” Youngblood can fill the gap. 488 U.S. at 58.
¶ 24. Youngblood has been used in this manner in other jurisdictions. For example, in State v. Geeslin, the Ohio Supreme Court considered a case where a trooper accidentally recorded over patrol car footage of a defendant’s stop, such that the “only relevant events remaining on the videotape relating to [the defendant’s] arrest are those that occurred after [the defendant] was stopped.” 2007-Ohio-5239, 878 N.E.2d 1, at ¶ 4. The court recognized that the missing evidence “would not have been used for the purpose of establishing [the defendant’s] guilt or innocence,” but instead, would serve to “challenge or corroborate the justification for the stop.” Id. ¶ 12. Because the missing footage was relevant “only with regard to the validity of the stop that led to [the defendant’s] arrest,” the court concluded it was not materially exculpatory evidence under Brady, but instead, fell into the category of potentially useful evidence. Id. ¶ 13. Accordingly, the Ohio high court applied the second Youngblood test to determine whether the trooper acted in bad faith in recording over the footage. Id. ¶ 14; see also United States v. Houston, 548 F.3d 1151, 1155 (8th Cir. 2008) (applying Youngblood test where officers failed to preserve video evidence of traffic stop); Ellis v. State, 77 So. 3d 1119, 1124 (Miss. Ct. App. 2011) (applying bad faith test to erasure of memory card of defendant’s traffic stop); Higginbotham v. State, 416 S.W.3d 921, 926 n.1 (Tex. App. 2013) (observing if defendant could argue State failed to preserve in-car camera recording showing what transpired at arrest in bad faith, he could prevail on claim under Youngblood).
¶ 25. I agree that defendants like the one in the instant case should not be without recourse when seeking to challenge undisclosed, unpreserved, or even “noncreated” evidence that bears on suppression of evidence because of the possibility of a constitutional violation. On the other hand, a rule created to implement fully the State’s duty to prove guilt beyond a reasonable doubt and fairly disclose exculpatory evidence does not neatly apply in connection with factfinding where the defendant has the burden of proof and guilt is not being determined. Indeed, the real issue is the scope of the exclusionary rule.
¶ 26. I recognize that Vermont has diverged from the federal courts in its development of a broad exclusionary rule. In State v. *165 Oakes, we noted that the United States Supreme Court treats the federal exclusionary rule as “a judicially created remedy rather than a constitutional right,” and as such, focuses on weighing the costs and benefits associated with applying the rule in particular circumstances. 157 Vt. 171, 174, 598 A.2d 119, 122 (1991). Instead, we recognized that our state exclusionary rule “effectuates Article 11 rights” and that reliance on an empirical assessment would “disserve those rights.” Id. at 174, 175, 598 A.2d at 121, 122; see also State v. Badger, 141 Vt. 430, 453, 450 A.2d 336, 349 (1982) (concluding introduction of ill-gotten evidence at trial “eviscerates our most sacred rights, impinges on individual privacy, perverts our judicial process, distorts any notion of fairness, and encourages official misconduct”).
¶ 27. However, application of the exclusionary rule as the appropriate remedy requires “demonstrating a connection between the constitutional violation and the physical evidence seized.” State v. Delaoz, 2010 VT 65, ¶ 15, 189 Vt. 385, 22 A.3d 388, superseded by statute on other grounds (noting also that exclusionary rule applies only where challenged evidence “discovered through exploitation of an illegality” and that defendant must show causal relationship between unlawful conduct and discovery of evidence). Accordingly, for a claim based only on a police officer’s negligence, with no proof there was actually a constitutional violation, I see no reason to expand the exclusionary rule here. See also State v. Lussier, 171 Vt. 19, 30, 757 A.2d 1017, 1025 (2000) (emphasizing focus of analysis of scope of exclusionary rule “should be on the individual constitutional rights at stake”). I believe Youngblood affords defendant sufficient recourse in the situation present here.
¶ 28. Under the Youngblood standard, defendant in this case must prove that the officer acted in bad faith in failing to turn on the video system. There is no evidence of bad faith and defendant has not claimed it. For that reason, and the reasoning of the majority, I would affirm.