IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. STEWART

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEFFREY D. STEWART, APPELLANT.

Filed September 30, 2025.    No. A-24-759.

Appeal from the District Court for Madison County: JAMES G. KUBE, Judge. Affirmed in part, and in part reversed and remanded for resentencing.

Matthew A. Headley, Annette M. Ruffcorn, and Matthew H. Soltys, of the Madison County Public Defender's Office, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Jeffrey D. Stewart appeals his plea-based convictions for unauthorized use of a financial transaction device and obstructing governmental operations. He assigns as error that the sentence imposed for unauthorized use of a financial transaction device is excessive and the court erred in applying his credit for time served. Stewart also assigns as error that his trial counsel was ineffective in failing to provide Stewart with discovery; depose company employees who held company credit cards; obtain and present Stewart's pertinent medical records at sentencing and failing to request a current mental health evaluation of Stewart; provide an effective and zealous defense; and by deceiving him into waiving his right to a speedy trial. For the reasons set forth herein, we affirm in part, and in part reverse and remand for resentencing.

- 1 -

## II. STATEMENT OF FACTS

### 1. BACKGROUND

In December 2022, the North Fork Area Transit (NFAT) notified law enforcement that between April and December 2022, Stewart, who was NFAT's executive director, allegedly made unauthorized purchases on a company credit card. Stewart was initially charged with theft by unlawful taking in an amount of $5,000 or more, a Class IIA felony. A subsequent information was filed which added a second charge, unauthorized use of a financial transaction device, over $5,000, also a Class IIA felony.

### 2. PLEA HEARING

Pursuant to a plea agreement, Stewart pled no contest to a second amended information charging him with count I, unauthorized use of a financial transaction device, over $5,000, a Class IIA felony; and count II, obstructing governmental operations, a Class I misdemeanor. As part of the plea agreement, the State agreed not to make any specific recommendations at sentencing, not to make specific requests pertaining to minimum and maximum terms for count I, and to request 10 days' incarceration for count II. The State advised that it would be seeking restitution and there was no agreement on restitution. Stewart requested that a restitution hearing be held during the sentencing hearing.

The State provided a factual basis that stated the parties agreed that the court could take judicial notice of the preliminary hearing held regarding count I and that the amount of money spent solely in Madison County was "well over [$]5,000." In summary, evidence presented during the preliminary hearing established that Stewart, as executive director of NFAT, was issued a company credit card in approximately April 2022 to be used for company expenses. The account number of the bank card issued to Stewart ended in 1790 and no other card issued to other employees of NFAT ended in that account number. After the board of directors became aware of financial issues at the end of November 2022, they obtained credit card statements that showed non-business-related credit card usage by Stewart between April and December 2022. The evidence was turned over to law enforcement, who investigated and found that Stewart was the only individual using the credit card ending in 1790 for the time period from April to December 2022. During the course of the investigation, law enforcement also explored whether other persons were involved or participated in the credit card misuse and found none.

Regarding the charge of obstructing governmental operations, the State provided a factual basis that set forth that while incarcerated in the Madison County Jail, Stewart was in the day room area when he appeared to slip on water that had been spilled on the floor. Stewart reported that he had not seen the water, stepped on it, and fell. He reported to jail staff that he had been injured and wanted to make a complaint to the State Ombudsman. However, a video captured by cameras monitoring the area showed Stewart "walking up to the pool of water, looking at it, backed up at least once, looking at it again, looking up to the cameras, [then walking] to the pool of water and then falling." The State asserted that Stewart's report constituted a false report and was an unlawful act and obstructed operations of the jail.

### 3. Sentencing Hearing

At the start of the sentencing hearing, the court noted that Stewart's conviction of unauthorized use of a financial transaction device, over $5,000, "appears to be somewhat of an aberration to me. You don't have any prior criminal history, yet you used this business credit card of yours to extort a lot of money from the [NFAT] system, using that credit card for casinos, and hotels, and airlines, and vacations . . ." The State then called two witnesses: James Vrbsky, an investigator with the Madison County Sheriff's office; and Lacy Kimes, the current president of NFAT's board of directors.

Vrbsky testified that he reviewed NFAT's credit card statements regarding the card that Stewart had used to charge business expenses but had also charged personal expenses. According to Vrbsky, Stewart charged between $740,000 and $1,000,000 of non-business expenses to the business card, including casinos, airline tickets for personal travel, motel rooms, clothing, food, alcohol, motorcycle and vehicle repair, furniture, computer gaming systems, and health and beauty aids. Vrbsky also testified that since Stewart's conviction, he has monitored jail phone calls between Stewart and his friends and family and, during those calls, Stewart does not take full responsibility for his offenses. Vrbsky also testified that the Madison County Sheriff's Office investigated whether other persons were involved or participated in the credit card misuse, and they found none.

Kimes testified that NFAT is a non-profit business that provides affordable transportation serving a 35-mile radius around Norfolk, Nebraska. She stated that NFAT has regular bus routes and a call-ahead service where riders can call in advance to schedule their ride and then they are picked up at their location. According to Kimes, the majority of NFAT's riders either do not have their own transportation, cannot afford their own vehicle, have a disability, or are otherwise in a situation that does not allow them to drive on their own. Kimes stated that in December 2022, she was notified by another board member that there were charges on credit card statements that had not been authorized by the board of directors. Kimes testified that as a result of Stewart's theft, NFAT closed in January 2023 and laid off its 56 employees. Four months later, NFAT was able to resume operations but was only able to rehire 17 of its employees.

During his allocution to the court, Stewart stated:

I guess after hearing a lot of the things that were said today . . . it takes it back into further reflecting about my actions and the results of the things that I've done. Most importantly the effect that it's had on the community, the citizens of Norfolk, the citizens of Madison County and surrounding areas, this Court, of course, Your Honor, included everyone involved in this, it just draws a bunch of . . . shame, and regret, and guilt.

As I said earlier, I am not going to make any excuses for my actions because I've always believed that that's just taking away from the significance of things that have happened, but I do want to express my remorse and sorrow to everyone that has been involved or everyone that has been affected by this. I have always been an advocate for my employees, my record I think reflects that clearly. I feel horrible for the amount of people that have suffered because of the things that I've done. And my wife and my family, my wife who was always used to me working and taking care of her and our kids has been

providing for them for the past 14 months that I've been incarcerated. It's horrible, it's despicable.

And, quite frankly, I gave you my word earlier and I'll give it again, you know given the opportunity I will work until the skin wears off of my bones and my fingers, I will . . . break my back to make this right no matter how that is, no matter how it's got to be done, no matter how long it takes, no matter if I got to work two or three jobs to do it, I will do it.

I have a very strong, steady employment history and I look forward to the opportunity. And if that's not the opportunity that I'm given today, even when my incarceration is over, I will do everything in my power to make sure that I can [give] back the money to the community because public transit is a vital service for the community, and I've always been an advocate for that.

And, again, I just want to apologize for my actions, I'm so very sorry for that.

Following Stewart's allocution, the court stated:

Well, we've heard a lot of information from both sides here. Certainly your actions have had a huge negative effect on Madison County, the citizens of Madison County, Norfolk, 35 mile circumference of that city. Not just the public, but the workers who lost their job[s], the board. This . . . nonprofit business . . . is still trying to recover from your . . . very selfish actions.

I would tend to agree, you had done pretty well for yourself for only having an eighth grade education, but you took advantage of your own achievements as well as the public trust that accompanied your position. And I think it's inappropriate to blame the violation of this trust on mental health, on changes in medication, on drug use or any other reason. Ultimately, you took advantage of your access to public money.

You said here earlier you knew right from wrong. And regardless of the fact that maybe you had been suffering from mental health issues, a change in medications, whatever, you knew what you were doing at the time was wrong, I believe that. I believe you believe that, also.

You know, the lack of prior criminal history is noted and I noted it right off the bat; however, you've also been almost a life-long user of controlled substances on a daily basis. So, although you haven't been convicted of crimes that are reflected in your criminal history, you certainly have violated the criminal law and laws of this state in so doing, and I take that into question, as well.

. . . I'm going to find that you're not a qualified candidate for probation, that a sentence less than incarceration would depreciate the seriousness of these crimes and also would promote disrespect for the law. I also think that there is a substantial risk of future continued criminal activity.

I think you understood the nature of your actions at the time that you took them, and the potential consequences, and the potential harm to others. I don't find that there was any reason or excuse to justify your actions, and because of that I'm finding that you're not a qualified candidate for probation. With regard to restitution, . . . I will make a finding that the State has sustained its burden to prove the amount of the restitution up to 740,000

dollars. And I don't necessarily take one position or another with regard to whether some day you will pay that money back. Obviously, you don't have the immediate ability to pay that back, and I am going to sentence you to incarceration, but you'll eventually be released from incarceration and I think at that point you will have the ability. You testified to that ability, you have . . . at least on the record stated that . . . you'll do what you can working the skin off your bones to pay this back. And I don't know that you will do that, but you should try. That's the right thing to do.

You will have other responsibilities with regard to your family and your life, but you admitted a responsibility to pay back this money. And . . . I think it's a harder pill for all of us to swallow when we hear that [the] money was used to gamble, or that money was used on your vacations and just inappropriate fun things, that it wasn't just used on you, but it was also used on your family, which is somewhat of a violation to them, as well. So, I will find that restitution is appropriate and I am going to find that you have the ability to pay that again, maybe not now, but I think eventually you will.

For unauthorized use a financial transaction device in an amount over $5,000, the court sentenced Stewart to 15 to 18 years' imprisonment with credit for 417 days served and ordered Stewart to pay restitution of $740,000. For obstructing governmental operations, the court sentenced Stewart to 30 days' imprisonment with the sentences ordered to be served consecutively. Stewart has appealed and is represented by different counsel on appeal.

## III. ASSIGNMENTS OF ERROR

Stewart assigns as error (1) that the sentence imposed for unauthorized use of a financial transaction device was excessive and erred in applying his credit for time served and (2) that his trial counsel was ineffective in failing to (a) provide Stewart with discovery, (b) depose company employees who held company credit cards sharing the same account with Stewart, (c) obtain and present Stewart's pertinent medical records at sentencing and to request a current mental health evaluation of Stewart, and (d) provide an effective and zealous defense. He also assigns as error (e) that his trial counsel deceived him into waiving his right to a speedy trial.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. *State v. Nelson*, 318 Neb. 484, 16 N.W.3d 883 (2025).

The rule that a sentence will not be disturbed on appeal absent an abuse of discretion is applied to the restitution portion of a criminal sentence just as it is to any other part of the sentence. *State v. Street*, 306 Neb. 380, 945 N.W.2d 450 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Stewart's first assignment of error relates to sentencing. He contends that (a) the sentence imposed for unauthorized use of a financial transaction device is excessive, (b) the court erred in applying his credit for time served, and (c) the amount of restitution ordered is excessive.

#### (a) Sentence Imposed for Unauthorized Use
#### of Financial Transaction Device Conviction

Regarding Stewart's sentence for unauthorized use of a financial transaction device, Stewart argues that the court failed to consider mitigating factors such as Stewart's ability to obtain sobriety, his rehabilitative needs, and his willingness to reform; and that the court improperly considered "unsubstantiated and uncharged drug violations as aggravating factors." Brief for appellant at 21. He further argues that the presentence report investigation (PSR) noted that he "could benefit from the structure, supervision, and accountability provided by a term of probation." Brief for appellant at 20-21.

Stewart was convicted of unauthorized use a financial transaction device in an amount over $5,000, a Class IIA felony. See, Neb. Rev. Stat. § 28-620 (Reissue 2016). Stewart's sentence of 15 to 18 years' imprisonment is within the statutory sentencing range for Class IIA felonies, which are punishable by a minimum of no imprisonment and a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024) (felonies; classification of penalties).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Although Stewart contends that the district court placed insufficient weight in considering his ability to obtain sobriety, his rehabilitative needs, and his willingness to reform, a sentencing court is not required to articulate on the record that it has considered each sentencing factor, nor to make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). And regarding Stewart's claim that the court improperly considered unsubstantiated and uncharged drug violations, a sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented

as to any matter that the court deems relevant to the sentence. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020).

According to the PSR, Stewart is 33 years old, married, and has three dependents. He has an eighth grade education and never obtained a GED. Although his criminal history includes only two speeding tickets, the level of service/case management inventory assessed Stewart as a high risk to reoffend. Stewart admitted to being an alcoholic, to daily use of marijuana and cocaine, and to abusing prescription opiates in the past. Stewart has been diagnosed with ADHD, bipolar disorder, anxiety, and depression. During his presentence investigation interview, he identified two other NFAT employees that he claimed "should be in here (jail) with me." The probation officer noted that, despite Stewart taking responsibility for his actions, he "minimized his overall involvement and blamed others." The PSR also indicates that after resigning from his position in December 2022, Stewart absconded to Mexico and was arrested in mid-July 2023 when he crossed the border from Mexico back into the United States and surrendered to law enforcement.

In a letter included in the PSR, Stewart stated that "I will spend every ounce of energy and strength I have to make this right. That includes working my hands to the bones. My record criminally and employment wise speaks to my dedication of success. I know I will make this right one way or another." However, the probation officer noted that information provided on a verification form from one of Stewart's previous employers

> is particularly relevant, because it provides insight into a pattern of pro-criminal behavior. The verification mentioned [Stewart] not completing the billing process correctly, not ordering through the correct system to track shipments, and inventory equipment missing parts. According to the company's general manager, [Stewart] would not be considered for rehire.

Further, the probation officer pointed out an incident that further provided "insight into [Stewart's] pro-criminal thought process," which involved a recorded telephone call between Stewart and his mother that occurred while Stewart was in jail awaiting sentencing. During the call, Stewart was "heard telling his mother to go to a facility to obtain character letters from people suffering from memory loss."

As to the effects on Norfolk and its residents, a letter from the NFAT Board of Directors pointed out that

> [a]s a direct result of [Stewart's] actions, NFAT's ridership went from approximately 70,000 riders in 2022 to just 30,000 in 2023. The reduction in services has left the most vulnerable members of our community – elderly and disabled residents, children who rely on transportation to school, and employees who need transportation to work[-- without transportation.]
>
> Mr. Stewart's conduct extended to dishonest practices such as altering contracts and falsifying documents, all while systematically siphoning funds from a nonprofit dedicated to helping others.

In sum, based upon factors including that the sentence imposed for his conviction of unauthorized use a financial transaction device in an amount over $5,000 was within the statutory sentencing range, his high risk to reoffend, his minimization of his involvement and blaming of

others for his commission of the offense, the fact that Stewart's actions took place over a period of months, the magnitude of the loss suffered by NFAT and the citizens of Norfolk due to the temporary closure and subsequent reduction of transit options, the sentence imposed for Stewart's conviction of unauthorized use of a financial transaction device in an amount over $5,000 was not an abuse of discretion. For these same reasons, we reject Stewart's claim that the court abused its discretion in failing to sentence him to probation. This assignment of error fails.

Although Stewart has not alleged any error regarding the sentence imposed for his conviction of obstructing governmental operations, a Class I Misdemeanor, we address the claim raised in the State's brief, which alleges that the district court committed plain error in imposing a determinate sentence for Stewart's conviction of obstructing governmental operations, a Class I misdemeanor. See Neb. Rev. Stat. § 28-901 (Reissue 2016) (obstructing government operations).

In this case, the district court sentenced Stewart to 30 days' imprisonment for obstructing governmental operations, a Class I misdemeanor, which sentence was imposed consecutively to his other sentence, which was for a Class IIA felony. The sentence imposed for obstructing governmental operations is within the statutory sentencing range for Class I misdemeanors, which are punishable by a minimum of no imprisonment and a maximum of not more than 1 year's imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016) (misdemeanors; penalties). Although the sentence imposed is within the statutory sentencing range, the State contends that court erred in failing to impose an indeterminate sentence for the Class I misdemeanor.

Section 28-106(2) provides that

> Sentences of imprisonment in misdemeanor cases shall be served in the county jail, except that such sentences may be served in institutions under the jurisdiction of the Department of Correctional Services if the sentence is to be served concurrently or consecutively with a term for conviction of a felony and the combined sentences total a term of one year or more. A determinate sentence shall be imposed for a misdemeanor if the sentence is to be served concurrently or consecutively with a determinate sentence for a Class III, IIIA, or IV felony.

Here, because Stewart's misdemeanor sentence was imposed consecutively to the sentence imposed for a Class IIA felony (not a Class III, IIIA, or IV felony), his misdemeanor sentence should have been imposed as an indeterminate sentence. We note that, although Neb. Rev. Stat. § 29-2204.02(5) (Reissue 2016) similarly requires a determinate sentence when a misdemeanor sentence is imposed consecutively or concurrently with sentences for certain felony convictions, it applies in situations not present in the instant case, i.e., "[f]or any sentence of imprisonment for a misdemeanor imposed consecutively or concurrently with a sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015 . . ." Because the court was required to impose an indeterminate sentence for the Class I misdemeanor, we vacate that sentence and remand to the district court for resentencing on this count. See *State v. Wells*, 28 Neb. App. 118, 940 N.W.2d 847 (2020) (after determining district court's imposition of determinate, rather than indeterminate, sentences on misdemeanor convictions constituted plain error, appellate court vacated sentences on misdemeanor convictions and remanded on those counts for resentencing).

(b) Credit For Time Served

Stewart also contends that the district court abused its discretion in applying his credit for time served only to the sentence imposed for unauthorized use of a financial transaction device and not the aggregate of his sentences. In support of this claim, Stewart cites to *State v. Nelson*, 318 Neb. 484, 501, 16 N.W.3d 883, 895 (2025), for the proposition that "[c]redit [for time served] must be applied, just once, to the aggregate of all terms imposed." The State concedes that the district court's application of credit was incorrect under *Nelson*. We agree.

The district court sentenced Stewart to 15 to 18 years' imprisonment for unauthorized use of a financial transaction device in an amount over $5,000, a Class IIA felony, and 30 days' imprisonment for obstructing governmental operations, a Class I misdemeanor. The court applied 417 days of credit for time served to the felony sentence. "[W]hen a court imposes multiple sentences contemporaneously, whether such sentences are ordered to be served consecutively or concurrently, all available credit for time served under § 83-1,106(1) is applied just once, to the aggregate of all terms imposed." *State v. Nelson*, 318 Neb. at 499, 16 N.W.3d at 894. Although this court could modify the sentencing order on appeal, because we have determined that remand is necessary to cure plain error regarding another sentencing issue, we instead direct the district court upon remand to apply credit for time served to the new aggregate sentence imposed consistent with *State v. Nelson*, 318 Neb. 484, 16 N.W.3d 883 (2025).

(c) Restitution

Stewart's final claim regarding his sentence is that the district court abused its discretion in ordering him to pay $740,000 in restitution. Specifically, he argues that the "sum is impossible to pay" while he is serving a lengthy period of incarceration. Brief for appellant at 22. He contends that

> the lower court either 1) did not consider the restitution [that Stewart] would have to pay back when it imposed a lengthy sentence of incarceration, or 2) did not consider how a lengthy sentence of incarceration would impact [his] ability to pay restitution. Additionally, the lower court gave no indication of any kind of installments or time period for which [Stewart] needed to have restitution paid.

Brief for appellant at 22.

Regarding restitution, the Nebraska Supreme Court stated in *State v. Street*, 306 Neb. 380, 387, 945 N.W.2d 450, 457 (2020):

> Restitution is purely statutory, and a court has no power to issue such an order in the absence of enabling legislation. Restitution ordered by a court pursuant to § 29-2280 is a criminal penalty imposed as a punishment for a crime and is part of the criminal sentence imposed by the sentencing court.
>
> Restitution, like any other part of the sentence, involves discretion. The appropriateness of an order of restitution is necessarily a subjective judgment and not a mathematical application of factors. On appeal, we do not endeavor to reform the trial court's order. Rather, we review the record made in the trial court for compliance with the statutory factors that control restitution orders.

Neb. Rev. Stat. §§ 29-2280 through 29-2289 (Reissue 2016 and Cum. Supp. 2024) govern a trial court's authority to order restitution for damages sustained by the victim of a crime for which the defendant is convicted. Section 29-2280 provides:

A sentencing court may order the defendant to make restitution for the actual physical injury or property damage or loss sustained by the victim as a direct result of the offense for which the defendant has been convicted. With the consent of the parties, the court may order restitution for the actual physical injury or property damage or loss sustained by the victim of an uncharged offense or an offense dismissed pursuant to plea negotiations. Whenever the court believes that restitution may be a proper sentence or the victim of any offense or the prosecuting attorney requests, the court shall order that the presentence investigation report include documentation regarding the nature and amount of the actual damages sustained by the victim.

Section 29-2281 provides, in pertinent part:

(1) To determine the amount of restitution, the court may hold a hearing at the time of sentencing. The amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record. The court shall consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim. In considering the earning ability of a defendant who is sentenced to imprisonment, the court may receive evidence of money anticipated to be earned by the defendant during incarceration.
. . . .
(3) The court may order that restitution be made immediately, in specified installments, or within a specified period of time not to exceed five years after the date of judgment or defendant's final release date from imprisonment, whichever is later.

Section 29-2282 elaborates in relevant part:

In determining restitution, if the offense results in damage, destruction, or loss of property, the court may require: (1) Return of the property to the victim, if possible; (2) payment of the reasonable value of repairing the property, including property returned by the defendant; or (3) payment of the reasonable replacement value of the property, if return or repair is impossible, impractical, or inadequate.

The Nebraska Supreme Court has explained:

Under § 29-2281, before restitution can be properly ordered, the trial court must consider (1) whether restitution should be ordered, (2) the amount of actual damages sustained by the victim of a crime, and (3) the amount of restitution a criminal defendant is capable of paying.

In accordance with § 29-2281, the restitution "shall be supported by evidence which shall become a part of the court record," but a sentencing court has broad discretion as to the source and type of evidence and information that may be used. This evidence must

- 10 -

provide meaningful information from which the sentencing court can meaningfully consider the various statutory factors set forth in §§ 29-2280 through 29-2289.

*State v. Street*, 306 Neb. 380, 389, 945 N.W.2d 450, 458 (2020).

In the instant case, the district court found, based upon the PSR and testimony and exhibits presented during the sentencing hearing, that the State sustained its burden to prove the amount of the restitution up to $740,000, and found that an order of restitution was appropriate. And, although the district court acknowledged that Stewart did not have the immediate ability to pay back the ordered restitution, the court noted that eventually Stewart would be released from incarceration and at that point, Stewart would have the ability to repay. The court further noted that Stewart had stated, on the record, that he would work "the skin off [his] bones to pay this back." We further note that, under § 29-2281, ability to pay is a consideration that the sentencing court must weigh against the defendant's obligations to the victim for the crime or crimes committed; it is neither exclusive of other factors nor controlling of the discretion of the court. *State v. Street, supra*.

And regarding Stewart's claim that the court "either 1) did not consider the restitution [that Stewart] would have to pay back when it imposed a lengthy sentence of incarceration, or 2) did not consider how a lengthy sentence of incarceration would impact [his] ability to pay restitution," brief for appellant at 22, the court specifically noted that Stewart lacked the ability to immediately repay the ordered restitution but found that Stewart would eventually be released from prison and would have the ability to repay the restitution at that time.

Finally, regarding Stewart's claim that the district court "gave no indication of any kind of installments or time period for which [Stewart] needed to have restitution paid," *id.*, we agree. Section 29-2281(3) provides that "[t]he court may order that restitution be made immediately, in specified installments, or within a specified period of time not to exceed five years after the date of judgment or defendant's final release date from imprisonment, whichever is later." The district court erred in failing to do so. See *State v. Esch*, 290 Neb. 88, 858 N.W.2d 219 (2015) (Nebraska Supreme Court found plain error where sentencing court failed to specify the manner of payment of restitution as required under § 29-2281). Accordingly, on remand, the district court is ordered to specify the manner of payment of restitution as required pursuant to § 29-2281.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Stewart's second assignment of error is that his trial counsel was ineffective in failing to: (a) provide Stewart with discovery; (b) depose company employees who held company credit cards sharing the same account with Stewart; (c) obtain and present Stewart's pertinent medical records at sentencing and request a current mental health evaluation of Stewart; (d) provide an effective and zealous defense; and (e) that his trial counsel deceived him into waiving his right to a speedy trial. We address each of these claims in turn.

### (a) Failure to Provide Discovery

Regarding Stewart's claim that his counsel "failed to provide discovery to [him]," he argues that "trial counsel never conveyed the evidence that trial counsel received from the [S]tate pursuant to discovery requests" and that this failure "prevented him from making an informed decision regarding the strength of the case against him." Brief for appellant at 8 and 25.

Recently, in *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023), the Nebraska Supreme Court addressed a similar claim that the defendant's counsel was ineffective for failing to share discovery with him in relation to a shooting crime. In addressing whether the claim was stated with sufficient specificity, the Nebraska Supreme Court stated:

> [The defendant] does not identify any reports that would have aided his defense, any inaccuracies that were contained therein, any potential defenses, or any potential witnesses who would have testified either that someone other than [the defendant] possessed the gun or that it was not fired at the apartment building. Although we have some doubt regarding whether [the defendant] sufficiently pled this claim, both parties assert that the record is insufficient to review it.

*State v. Dap*, 315 Neb. at 477-78, 997 N.W.2d at 373-74. The State makes no such assertion here. And on this record, where the evidence is so strong regarding Stewart's guilt, we find that Stewart failed to plead this claim with sufficient particularity by generally alluding to his counsel's failure to share discovery with him without identifying what discovery was not shared, how it was meaningful, or how it provided any defense against the charges. On this record, we find the claim fails on the basis that it was not pled with sufficient specificity.

### (b) Failure to Depose Other NFAT Employees

Next, Stewart argues that his trial counsel was ineffective in failing to depose company employees who held company credit cards sharing the same account with Stewart. Stewart alleges that "he requested [that] his trial counsel . . . undertake a deposition of each executive level employee at [NFAT] who had a company credit card during the applicable timeframe" but that no depositions were taken. Brief for appellant at 25. He further contends that "[t]here [was] a reasonable probability that the testimony developed by the depositions would have been exculpatory or mitigating for [him] because [he] alleges that several employees had credit cards and all individual card charges ended up in one account thus implicating multiple employees for the crimes that [Stewart] was solely charged." Brief for appellant at 26.

During the preliminary hearing, Traci Jeffrey, the president of NFAT between April and December 2022, testified that Stewart, as executive director of NFAT, was issued a company credit card in approximately April 2022 to be used for company expenses. Jeffrey stated that the account number of the bank card issued to Stewart ended in 1790 and that no other card issued to other employees of NFAT ended in that account number. According to Jeffrey, NFAT's board first became aware of financial issues at the end of November 2022 when a vendor reached out, stating that the vendor had not been paid. At that time, the board requested documentation from Stewart, including credit card statements. After Stewart claimed that he did not have credit card statements, Jeffrey obtained the statements from the bank. After reviewing the statements and noticing credit card usage that was not for business purposes, she turned the evidence over to law enforcement.

Also, during the preliminary hearing, Investigator Vrbsky testified that he knew with absolute certainty that Stewart was the individual using the credit card ending in 1790 from April to December 2022. Similarly, Investigator Christian Hjorth with the Madison County Sheriff's Office testified that the credit card ending in 1790 was issued solely to Stewart for use between April and December 2022. And, during the sentencing hearing, Investigator Vrbsky testified that

the Madison County Sheriff's Office investigated whether other persons were involved or participated in the credit card misuse, and they found none.

In addition to the fact that the record contradicts Stewart's claim that multiple people were involved in committing the crime, the allegation provides no basis to exculpate Stewart from having committed the crime himself, regardless of whether others were involved. As such, on this record, we find that Stewart's claim that his counsel was ineffective in failing to depose others regarding their potential involvement did not prejudice him. This claim fails and is not preserved.

### (c) Failure to Obtain and Present Medical Records and Failure to Request Current Mental Health Evaluation

Stewart's third allegation of ineffective assistance of trial counsel is that trial counsel failed to obtain and present Stewart's pertinent medical records at sentencing and failed to request a current mental health evaluation of Stewart. We note that in his argument, Stewart argues that "[p]roduction of his medical records and evaluative results . . . could have assisted in [the] determination of [his] fitness to stand trial, [and] for the County Attorney's consideration regarding plea negotiation"; however, because these claims were not included in his assignment of errors, we decline to address them. Brief for appellant at 27. See *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

A similar situation was considered by the Nebraska Supreme Court in *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015), wherein the defendant alleged on direct appeal that his trial counsel was ineffective in failing to arrange for him to have a separate drug and alcohol evaluation and then include the results of that evaluation in the PSR. He alleged such an evaluation would have provided more detail about his life and was "one tool among many" that could have humanized the defendant before the court. *Id.*, 291 Neb. at 159, 864 N.W.2d 674-75. The Nebraska Supreme Court rejected this claim noting that the PSR was extensive and included sections regarding the defendant's background, criminal history, family life and relationships, use of alcohol and drugs, and prior treatment for alcohol and drugs, as well as the circumstances of the offense. The Court held that "[a]ny additional information obtained by a drug and alcohol evaluation would have been largely cumulative. There is no reasonable probability that the sentence would have been different if a drug and alcohol evaluation had been included in the [PSR]." *Id.*, 291 Neb. at 159, 864 N.W.2d at 675.

Similarly here, Stewart's mental health issues were brought to the attention of the district court numerous times. During a bond hearing held on September 29, 2023, defense counsel informed the court that Stewart had "[b]ipolar depression and some anxiety." Further, the PSR included substantial information regarding Stewart's background, criminal history, family life and relationships, use of alcohol and drugs, prior treatment for alcohol and drugs, and the circumstances of the offenses. The PSR also included specific information regarding Stewart's mental health, including Stewart's reports that he struggled with suicidal thoughts throughout his childhood and during the investigations into the current charged offenses. The PSR also stated that Stewart reported being diagnosed with ADHD, bipolar disorder, anxiety and depression. Further, Stewart reported seeing various mental health providers during his teen years but denied attending any therapy appointments recently. Stewart reported that although he was seeing a medication

provider in Norfolk, his symptoms progressively worsened during this time period after his medication was changed. Stewart's statement included in the PSR acknowledged his bipolar disorder and that his "mental state was in full decline" during his commission of the offense of unauthorized use of a financial transaction device.

Additionally, a letter from defense counsel included in the PSR set forth that "Stewart has substance abuse and mental health issues that are best dealt with using community resources and the structure of probation." Defense counsel's letter further stated that

> Stewart has fully admitted his struggles with alcohol and mental health and while those issues do not absolve him of responsibility for his actions, they are issues that can be helped so that they do not lead him down a similar path in the future. Especially important is his need to be properly medicated. As he explained during the [PSR] interview, his medication was changed and he was not in his right mind. Continued monitoring of his medication and dosage is crucial for his recovery.

In sum, substantial information was included in the PSR regarding Stewart's mental health issues, and any additional information obtained by a mental health examination of Stewart and/or the inclusion of Stewart's medical records in the PSR would have been largely cumulative. There is no reasonable probability that Stewart's sentences would have been different if a current mental health examination and Stewart's pertinent medical records had been included in the PSR. This claim fails.

### (d) Failure to Provide Effective and Zealous Defense

Stewart's fourth assigned error regarding the ineffective assistance of trial counsel is that his counsel "failed to provide an effective and zealous defense." Brief for appellant at 9. This court has previously found that an assignment of error alleging that trial counsel was ineffective in "fail[ing] to provide an effective and zealous defense" was insufficiently pled. *State v. Rupp*, 33 Neb. App. 562, 584, 19 N.W.3d 771, 788 (2025). See, also, *State v. Turner*, 315 Neb. 661, 677, 998 N.W.2d 783, 795 (2024) (Nebraska Supreme Court rejected appellant's assignments of error as insufficiently pled where appellant assigned that defense counsel failed to "'zealously advocate for [him]'" and failed to "'present an adequate defense'"). Because Stewart's assigned error is insufficiently pled, this assignment of error fails.

### (e) Allegation that Trial Counsel Deceived Stewart Into Waiving His Right to Speedy Trial

Next, Stewart assigns as error that his trial counsel deceived him into waiving his right to a speedy trial. He argues "that trial counsel purposely misled him to waive his right to speedy trial by convincing [him] that counsel needed additional time to obtain discovery, review discovery, and meet with [Stewart] to discuss the evidence that the [S]tate intended to present at trial." Brief for appellant at 27.

In *State v. McHenry*, 268 Neb. 219, 231–32, 682 N.W.2d 212, 224 (2004), the Nebraska Supreme Court addressed a defendant's postconviction claim that trial counsel was ineffective in seeking a continuance despite the defendant's refusal to sign a speedy trial waiver:

This court has stated that "'except for such basic decisions as ... whether to plead guilty, waive a jury trial, or testify in his or her own behalf, a defendant is bound by the tactical or strategic decisions made by his or her counsel.'" *State v. Nesbitt*, 264 Neb. 612, 623, 650 N.W.2d 766, 778-79 (2002). Given the language of § 29-1207(4)(b) and our case law, it is clear that the statutory right to a speedy trial is not a personal right that can be waived only by a defendant. This conclusion is in accord with cases decided elsewhere under similar statutory language.

Indeed, several courts in other jurisdictions have explicitly held in direct appeals that a defense counsel's request for a continuance in order to prepare for trial waived the defendant's statutory right to speedy trial over the defendant's objection to the continuance. See, *Townsend v. Superior Court*, 15 Cal.3d 774, 543 P.2d 619, 126 Cal. Rptr. 251 (1975) (concluding that defendant was bound by counsel's continuances, requested because heavy caseload had impeded counsel's preparedness for trial, despite defendant's refusal to waive time on the record and demands to court to be tried); *State v. LeFlore*, 308 N.W.2d 39 (Iowa 1981) (determining that statutory right to speedy trial is not personal; upholding counsel's continuance and waiver of defendant's statutory right to speedy trial on ground that counsel was unprepared for trial, despite defendant's refusal to sign waiver); *State v. Ward*, 227 Kan. 663, 608 P.2d 1351 (1980) (concluding that matter of trial preparation is strategic and tactical decision; defense counsel's continuances extended statutory period for trial despite defendant's objections); *State v. McBreen*, 54 Ohio St. 2d 315, 376 N.E.2d 593 (1978) (holding that defense counsel had authority to waive statutory time for trial for reasons of trial preparation and that defendant was bound by waiver even though waiver was executed without defendant's consent); *State v. Campbell*, 103 Wash. 2d 1, 691 P.2d 929 (1984) (concluding that defendant could not show prejudice because of defense counsel's continuance over his objections when continuance ensured more effective representation and fair trial). See, also, *State v. Sayers*, 211 Neb. 555, 319 N.W.2d 438 (1982) (citing *Townsend* as example of courts holding that defendant is bound by strategic decisions of defense counsel).

Here, Stewart's specific assignment of error is that his counsel was ineffective in misleading or deceiving him into waiving his right to a speedy trial. But as the above cases make clear, Stewart's counsel was entitled to make tactical and strategic decisions on Stewart's behalf, regardless of whether Stewart agreed to them. The decision to seek a continuance to adequately prepare for trial is one such decision. Because the record reflects Stewart's counsel made strategic decisions to request continuances in order to adequately prepare for trial, it makes no difference whether Stewart agreed to those strategic decisions or not. As such, there was no prejudice to Stewart in relation to his specific assignment that he was improperly convinced to join in his counsel's strategic decision to continue his case. This claim fails and is not preserved.

## VI. CONCLUSION

In sum, we affirm Stewart's convictions. Regarding Stewart's sentences, we affirm the sentence imposed for unauthorized use of a financial transaction device, but we reverse the sentence imposed for obstructing governmental operations and remand to the district court to

- 15 -

resentence Stewart to an indeterminate sentence. We also direct the district court upon remand for resentencing to apply credit for time served to the new aggregate sentence imposed consistent with *State v. Nelson*, 318 Neb. 484, 16 N.W.3d 883 (2025). We affirm the amount of restitution ordered but on remand for resentencing, we direct the district court to specify the manner of payment of restitution as required pursuant to § 29-2281. Finally, regarding Stewart's claims of ineffective assistance of trial counsel, we find that each of these claims fail and are not preserved for postconviction review.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR RESENTENCING.